**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MELVIN BRITTON,

        Plaintiff,

v.

OIL CITY AREA SCHOOL DISTRICT,

        Defendant.

Civil Action No. 1:16-cv-00186 (BJR)

MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

## I. INTRODUCTION

Currently before the Court is Defendant's Motion for Summary Judgment (Doc. No. 32). Having reviewed the parties' submissions, the record of the case, and the relevant legal authority, the Court will GRANT Defendant's Motion. The Court's reasoning follows.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Mel Britton was hired by Defendant Oil City Area School District on July 7, 2006 to be the Director of Building and Grounds. (Doc. No. 34 ¶ 9.) The formal job description for this position was revised in 2013 by the District's Superintendent and Plaintiff in order to match the listed job responsibilities with what Plaintiff was actually doing at the time. (*Id.* ¶ 15.) The 2013 job description states that "[t]he primary function of the Director of Building and Grounds is the supervision and direction of all maintenance, housekeeping (custodial), grounds personnel and administrative secretary in order to keep all District facilities in a clean and comfortable environment." (*Id.* ¶ 16.) The job description lists fifteen responsibilities, with twenty-seven "related responsibilities" also listed. (*Id.* ¶ 17.) The first job duty set forth in the list of responsibilities is to "[s]upervise maintenance and housekeeping employees and their work while

1

providing for the daily maintenance and housekeeping of all District buildings and grounds per their job description. Monitor and evaluate the performance of all maintenance and housekeeping personnel." (*Id.* ¶ 18.) The second job duty set forth in the list of responsibilities is to "[a]ssure timely processing and response to requested work orders[.]" (*Id.* ¶ 19.) Plaintiff testified that the first listed responsibility – supervision of daily operations – took up roughly 75% of his daily time, while the second responsibility – processing and responding to work orders – took up roughly 25% of his daily time. (*Id.* ¶ 20.) He subsequently testified that it was difficult to quantify the actual time spent on one specific duty listed in the job description because time spent supervising included dealing with other tasks such as bid specifications and labor contracts. (Doc. No. 40-1 at 16-17.)

During his first five years as the Director of Building and Grounds, Plaintiff was responsible for supervising twenty custodians, six maintenance personnel, and one secretary, for a total of twenty-seven employees supervised. (Doc. No. 34 ¶ 22.) Beginning in 2011, following the retirements of two maintenance personnel, plaintiff supervised twenty-five employees. (*Id.* ¶ 23.)

Defendant has faced ongoing budget concerns arising from several factors, including (1) a drop in enrollment from 2,746 students in 1995-1996 to 2,081 students in 2016-2017; (2) a declining real estate tax base; and (3) a shift in funding from the Commonwealth of Pennsylvania to local school districts. (*Id.* ¶ 4.) Beginning in 2012 or 2013, Plaintiff was asked by the District Superintendent to solicit prices on what it would cost to subcontract custodial and maintenance operations, in order to see whether those services could be obtained more cheaply through outsourcing. (*Id.* ¶¶ 25-26.) Plaintiff received quotes from four companies for custodial services, and two quotes for maintenance services. (Doc. No. 38 ¶ 27.) The quotes obtained by Plaintiff

2

indicated that the District could save money by outsourcing its custodial operations, but it was cheaper to retain the existing maintenance personnel. (Doc. No. 34 ¶ 29.) The District's analysis of the salary and benefits cost of its custodial employees for 2014-2015 was $1,168,545.97, and given the proposal by a third-party contractor to perform the services for $806,210, the District determined it could save $362,335.97 annually by outsourcing its custodial services. (*Id.* ¶ 6.)

On May 26, 2015, Defendant entered into a contract with Facilities Maintenance Systems ("FMS") to provide custodial services and to oversee custodial services in the District's facilities. (*Id.* ¶ 34.) Following the District's entering into the contract with FMS, all twenty of the District's custodial employees were furloughed. (*Id.* ¶ 38.) Plaintiff was furloughed by the District effective August 28, 2015, when he was approximately 60 years old. (*Id.* ¶ 45.) The District never hired another Director of Building and Grounds after Plaintiff's employment was terminated. (*Id.* ¶ 48.)

Some of Plaintiff's job duties were reassigned to District employees Rick Downing and Brian Thompson. Downing has been employed by the District beginning in 1983 as a maintenance employee specializing in plumbing and heating work. (*Id.* ¶ 49) He was approximately 58 years old on September 29, 2015 when the Superintendent assigned him additional job responsibilities in the nature of "interacting with outside contractors and organizing work," for which he was paid an additional annual stipend of $2,400. (*Id.* ¶ 50; Doc. No. 39 ¶ 56.) Thompson has been employed by the District beginning in 2003 as a maintenance employee specializing in electrical and other technical work. (Doc. No. 34 ¶ 51.) He was approximately 48 years old on September 29, 2015 when he was assigned additional job responsibilities in the nature of "interacting with outside contractors and organizing work," for which he also was paid an additional $2,400 annual stipend. (*Id.* ¶ 52; Doc. No. 39 ¶ 55.) Neither Downing nor Thompson believed that the stipend they received each year for taking up Plaintiff's duties was sufficient. (Doc. No. 39 ¶ 68.)

3

Plaintiff's First Amended Complaint alleges two counts against Defendant, one for wrongful termination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and one for wrongful termination under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951 *et seq.* Defendant's motion for summary judgment (Doc. No. 32) is now ripe.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether to grant summary judgment, a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654 (1962). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on "unsupported assertions, conclusory allegations, or mere suspicions." *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *Williams v. Borough of West Chester*, 801 F. 2d 458, 460 (3d Cir. 1989).

### IV. DISCUSSION

"There is no need to differentiate between [Plaintiff's] ADEA and PHRA claims because, for our purposes, the same analysis is used for both." *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 972 (3d Cir. 1998). When a plaintiff relies on circumstantial evidence to prove discrimination, as here, the legal framework is provided by the burden shifting scheme first set

4

forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. 411 U.S. at 802. Ordinarily, a plaintiff may establish a *prima facie* case by showing that "(1) that he was at least forty years old, (2) that he was fired, (3) that he was qualified for the job from which he was fired, and (4) that he was replaced by a sufficiently younger person to create an inference of age discrimination." *Fakete v. Aetna, Inc.,* 308 F.3d 335, 338 (3d Cir. 2002) (citation omitted). However, where an employee is terminated during a reduction in force, the fourth element of the *prima facie* case becomes whether the employer retained employees who do not belong to the protected class. *See Showalter v. University of Pittsburgh Medical Center,* 190 F.3d 231, 234–235 (3d Cir. 1999). A discharged age-discrimination plaintiff who presents evidence that a younger employee assumed his responsibilities when his employer decided not to replace him has met his *prima facie* burden. *See Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 357 (3d Cir. 1999).

Under this test, the Court finds that Plaintiff has established a *prima facie* case of age discrimination. Plaintiff was older than 40 years when his position was terminated, and Defendant does not dispute that Plaintiff was qualified to serve as Director of Building and Grounds. Because Plaintiff's termination resulted from a reduction in force, the appropriate inquiry is whether Plaintiff's duties were assumed by younger employees. Plaintiff has presented evidence that some of his duties were reassigned to employees approximately two years younger and twelve years younger than him. This is sufficient to establish a *prima facie* case.

After a *prima facie* case is made, the employer must show a legitimate, non-discriminatory reason for the employment action. *McDonnell Douglas*, 411 U.S. at 802. Defendant has done so here by producing evidence of ongoing budget concerns and evidence that the restructuring

5

enabled the District to save $362,335.97 annually. Plaintiff does not dispute that Defendant has met its burden of production by identifying cost savings as the reason for Plaintiff's termination. (Doc. No. 37 at 8.)

Once the defendant meets this burden, it is then incumbent upon the plaintiff to establish that the defendant's proffered reason is merely a pretext for discrimination. *Id*. at 804. In disparate treatment cases, the plaintiff can ordinarily demonstrate pretext by "either (i) discrediting the proffered reasons [for the employment action], either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely or not a motivating or determinative cause for the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Pursuant to the Supreme Court's holding in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), however, an age discrimination plaintiff in a disparate treatment matter may not demonstrate pretext by proffering evidence that discrimination was more likely than not a motivating cause of the adverse action. "To establish a disparate-treatment claim under the plain language of the ADEA, [] a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." 557 U.S. at 176.

As proof of Defendant's pretext, Plaintiff points to evidence that a number of Plaintiff's duties were reassigned in-house to Downing and Thompson, and that Downing and Thompson believed they were not fully qualified and not fully compensated to fulfill those duties. Plaintiff explains, "The claim that Plaintiff's position was eliminated as a cost-saving measure is belied by the fact that the District retained two employees who were doing custodial work while paying an outside company to perform all custodial services. Had the District been motivated solely by cost, it wouldn't make sense to keep paying the salaries of two employees whose services were rendered completely redundant by the hiring of an outside contractor to cover those exact services." (Doc. No. 37 at 11).

Plaintiff's disagreement with Defendant's financial management, however, is not evidence of age discrimination. The record confirms the District's genuine budgetary concerns and the methodical process it undertook to identify cost-savings by hiring an outside contractor. While Plaintiff seeks to dispute whether his supervisory duties consumed exactly 75% of his time, there can be no question that supervising was a foremost responsibility for the Director of Building and Grounds. When twenty of the twenty-five employees that Plaintiff supervised were furloughed, Plaintiff's duties were necessarily reduced as well. Defendant's decision to terminate Plaintiff's position was consistent with its motivating interest in reducing costs by reducing its labor force.

The fact that a few of Plaintiff's duties were reassigned in-house after his position was terminated does not undermine Defendant's explanation. The purpose of Defendant's restructuring was to enable the same duties to be performed at lower cost. Downing's and Thompson's complaints that they were inadequately compensated for taking on Plaintiff's duties supports Defendant's contention that it sought to have these duties performed as cheaply as possible. Eliminating a salaried directorship and reassigning responsibilities to remaining employees for a modest stipend is exactly what one might expect from an employer genuinely intent on reducing costs. No reasonable juror could believe that this extensive restructuring was all pretext for discriminating against Plaintiff on the basis of age.

## V. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant Oil City Area School District's Motion for Summary Judgment. This case is DISMISSED.

Dated this 17th day of November, 2017.

*Barbara J. Rothstein*

Barbara Jacobs Rothstein
U.S. District Court Judge